UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Cirrus Design Corporation,

        Plaintiff,                            Court File No. 16-cv-3969 (JRT/LIB)

v.                              **REPORT AND RECOMMENDATION**

Cirrus Aviation Services, LLC,

        Defendant.

This matter came before the undersigned United States Magistrate Judge pursuant to an order of referral made in accordance with the provisions of 28 U.S.C. § 636(b)(1)(B), [Docket No. 29], and upon Defendant Cirrus Aviation Services, LLC's Motion to Dismiss for Lack of Personal Jurisdiction, or to Dismiss or Stay Pending Resolution of the First-Filed Nevada Action, [Docket No. 16]. The Court held a hearing on the Motion on September 6, 2017, after which the Motion was taken under advisement. (Minute Entry, [Docket No. 32]).

For the reasons set forth below, the Court recommends that Defendant Cirrus Aviation Services, LLC's Motion to Dismiss for Lack of Personal Jurisdiction, Or to Dismiss or Stay Pending Resolution of the First-Filed Nevada Action, [Docket No. 16], be **GRANTED**.

I.      BACKGROUND AND STATEMENT OF ALLEGED FACTS

Cirrus Design Corporation ("Cirrus Design"), is a Wisconsin corporation with its principal place of business in Duluth, Minnesota. (Compl., [Docket No. 1], 1). Founded in the 1980s, Cirrus Design "develop[s] and sell[s] fully manufactured personal aircraft and structural parts," including the Cirrus Airframe Parachute System. (Id. at 2). Cirrus Design "has used various trademarks containing the word CIRRUS since at least as early as 1987." (Nafziger Dec.,

[Docket No. 25], 1). Currently, Cirrus Design has a following on social media, and it engages in active online advertising. (Compl., [Docket No. 1], 3).

In 1994, Cirrus Design filed its first federal application to register the trademark "CIRRUS." (Compl., [Docket No. 1], 9). Cirrus Design owns the following trademark registrations: CIRRUS[1]; CIRRUS VISION[2]; CIRRUS AIRFRAME PARACHUTE SYSTEM[3]; CIRRUS[4]; CIRRUS[5]; and CIRRUS PERSPECTIVE[6]. Cirrus Design also provides aircraft inspection and repair services, flight instruction and training, and aircraft insurance. (Id. at 4). For use in this aspect of its business, Cirrus Design owns certain service mark registrations, including CIRRUS[7] and CIRRUS CERTIFIED.[8] (Id. at 4-5).

After Cirrus Design filed its first federal trademark application for CIRRUS, Defendant Cirrus Aviation Services ("Cirrus Aviation"), an Arizona Limited Liability Company with its principal place of business in Las Vegas, Nevada, was formed. (Compl., [Docket No. 1], 1, 7; Woods Dec., [Docket No. 19], 1). Cirrus Aviation's predecessor was Cirrus, Aviation Services,

---

[1] For "'aircraft and structural parts therefor.'" (Compl., [Docket No. 1], at 3).
[2] "'[F]or airplanes and structural parts therefor.'" (Id.).
[3] "[F]or 'parachutes; safety devices for aircraft, pilots and passengers, namely parachutes and parachute deployment equipment.'" (Id.).
[4] "[F]or 'jet aircraft and structural parts therefor; parachutes; safety devices for aircraft, pilots and passengers, namely, parachutes and parachute deployment equipment.'" (Id. at 4).
[5] "[F]or numerous other products including for 'computer hardware for aircraft; avionic sensor systems, namely, navigation systems, aircraft speed sensors, and aircraft altitude indicators.'" (Id.).
[6] "[F]or numerous products including 'computer hardware for aircraft; avionic sensor systems, namely, navigation systems, aircraft speed sensors.'" (Id.).
[7] For "'airplane maintenance and repair; information with relation to aircraft construction, repair and maintenance'[;]. . . 'aircraft inspection service, aircraft quality assurance services; aircraft design; providing a website featuring resources, namely non-downloadable software for flight and instrument training'[; and] 'airplane flight instructions; educational services, conducting live and online classes, symposia, seminars and webinars in the field of aircraft maintenance, modification, and repair and distribution of training materials in connection therewith.'" (Id. at 4-5).
[8] For "'rating the condition of pre-owned aircraft for buyers prior to purchase . . . ; advertising and marketing; advertising and publicity services; online retail store services connected with the sale of aircraft; business consultation in the field of sales of aircraft; providing marketing information in the field of sales of aircraft; business services, namely marketing of new and pre-owned aircraft for third parties; providing appraisal, and advertising services to others in the field of aircraft acquisition and sales'[;] . . . 'aircraft inspection services; aircraft quality assurance services; providing technical information in the fields of aircraft inspection and quality assurance'[; and] 'providing warranties on aircraft; warranty underwriting in the field of aircraft, aircraft engines/motors and aircraft-related machines and of parts, fittings and accessories for the aforesaid; warranty claims administration services, namely, processing warranty claims for the maintenance, repair and replacement of aircraft and parts thereof.'" (Id.).

Inc., a Washington corporation incorporated on December 12, 1994. (Id. at 7). Cirrus Aviation offers "private airline charter flights and other related services in the aircraft charter industry." (Hansen Aff., Exh. A, [Docket No. 18-1], 2). With respect to its charter flights, Cirrus Aviation represents that it offers:

> on demand aircraft charter services . . . across the Western United States and Mexico and is currently offering aviation services between Las Vegas, Nevada[,] and other destinations including Aspen, Colorado; Provo and Salt Lake City, Utah; Reno, Nevada; Phoenix, Arizona; Sun Valley, Idaho; Las Angeles, San Francisco, Sonoma, Napa, and San Diego, California; and Monterrey, Mexico.

(Id. at 3-4).

Since 2010, Cirrus Aviation has operated a website (www.cirrusav.com), through which it advertises its services under the name "Cirrus Aviation Services." (Compl., [Docket No. 1], 7 Hansen Aff., Exh. A, [Docket No. 18-1], 4). Also since at least 2010, Cirrus Aviation has advertised under this name on various social media platforms. (Compl., [Docket No. 1], 7; Hansen Aff., Exh. A, [Docket No. 18-1], 4). Cirrus Aviation asserts that it first adopted and used the trademark CIRRUS AVIATION in May 2007. (Hansen Aff., Exh. A, [Docket No. 18-1], 3).

On September 26, 2013, Cirrus Design applied for a U.S. service mark registration for CIRRUS for additional services involving employment staffing in the field of aircraft operations, including personnel recruitment and employment leasing; aircraft registration and title transfer; accident investigation reports; tracking aircraft operations; and managing training requirements for flight crews. (Compl., [Docket No. 1], 6).

Cirrus Design served Cirrus Aviation with a cease-and-desist letter in February 2014, but Cirrus Aviation refused to cease using the name Cirrus Aviation Services. (Id. at 7-8 Hansen Aff., Exh. A, [Docket No. 18-1], 6). Instead, in June 2015, Cirrus Aviation opposed Cirrus Design's latest trademark application for the mark CIRRUS, Cirrus Aviation asserted that

CIRRUS is "confusingly similar" to the CIRRUS AVIATION SERVICES trademark. (Id. at 7; Compl., [Docket No. 1], 7-8). Cirrus Aviation claimed that it was asserting "its strong Common Law trademark rights in and to the CIRRUS AVIATION marks, specifically noting that if [Cirrus Design] was permitted to register its CIRRUS mark to cover various aircraft related services, members of the public would erroneously believe that [Cirrus Design's] services originate with, or are in some manner connected or associated with, or sponsored by" Cirrus Aviation. (Hansen Aff., Exh. A, [Docket No. 18-1] 7-8).

Cirrus Aviation alleges after receipt of the cease and desist letter, and Cirrus Design has not contested this allegation, that "[s]ubsequently, and for the next year, the parties discussed and unsuccessfully negotiated the possibility of an amicable agreement and resolution of the dispute." (Id. at 8).

Notwithstanding these negotiations, on November 7, 2016, Cirrus Design sent Cirrus Aviation a copy of a draft Complaint Cirrus Design intended to file if the parties could not resolve their dispute. (Id. at 8-9; Nafziger Dec., Exh. C, [Docket No. 25-3]). In an accompanying letter, Cirrus Design informed Cirrus Aviation that it was "prepared to move forward with a lawsuit if [Cirrus Aviation] is not willing to withdraw its opposition of the CIRRUS trademark application . . . and cease use of the trademark and business name CIRRUS AVIATION SERVICES." (Id. at 2). Cirrus Design requested immediate written confirmation no later than November 21, 2016, that Cirrus Aviation would withdraw its opposition to the CIRRUS trademark application and cease the use of CIRRUS AVIATION SERVICES. (Id. at 4). Cirrus Design further stated: "If we do not hear from you by this date, or if Cirrus Aviation Services is unwilling to take the above actions, we will initiate the lawsuit in the District Court of Minnesota by serving you with the enclosed complaint." (Id.).

On November 18, 2016, Cirrus Aviation filed a declaratory judgment action in the United States District Court for the District of Nevada. (Hansen Aff., Exh. A, [Docket No. 18-1], 3); see, also, Cirrus Aviation Servs., LLC v. Cirrus Design Corp., No. 2:16-cv-02656-JAD-GWF (D. Nev.), [Docket No. 1]. Cirrus Aviation contended that its use of CIRRUS AVIATION and CIRRUS AVIATION SERVICES would not create confusion with Cirrus Design's use of the similar trademarks because the services and goods each party offers are distinct and separate and the names/trademarks they utilize are narrowly tailored. (Hansen Aff., Exh. A, [Docket no. 18-1], 8-9). Cirrus Aviation sought declaratory judgment that (1) its use of CIRRUS AVIATION and CIRRUS AVIATION SERVICES does not infringe any of Cirrus Design's protectable trademark rights in CIRRUS, CIRRUS AIRFRAME PARACHUTE SYSTEM, CIRRUS CERTIFIED, and CIRRUS PERSPECTIVE; and (2) Cirrus Aviation had committed no act of unfair competition through its concurrent use of CIRRUS AVIATION and CIRRUS AVIATION SERVICES.[9] (Id. at 9-10). In requesting declaratory relief, Cirrus Aviation asserted: "The substantial controversy is confirmed by the acts of [Cirrus Design] as set forth in its November 7, 2016 letter and threats of a trademark infringement and unfair competition lawsuit against [Cirrus Aviation's] use of the CIRRUS AVIATION and CIRRUS AVIATION SERVICES trademark." (Id. at 10).

On November 21, 2016, Cirrus Design filed its Complaint in this District. (Compl., [Docket No. 1]). Cirrus Design brings a claim of trademark infringement under the Lanham Act (Count I); a federal claim of unfair competition (Count II); and a claim for violation of the Minnesota Uniform Deceptive Trade Practices Act (Count III). (Id. at 9-11). Cirrus Design seeks declaratory relief that it has priority trademark ownership rights, damages in the amount of the

---

[9] Cirrus Aviation also sought compensatory damages, costs, and attorney's fees. (Id. at 11).

profits Cirrus Aviation earned under the trademark CIRRUS AVIATION SERVICES, injunctive relief, and costs and fees. (Id. at 12-13).

On May 24, 2017, Cirrus Aviation filed the present "Motion to Dismiss for Lack of Personal Jurisdiction, or to Dismiss or Stay Pending Resolution of First-Filed Nevada Action."[10] ([Docket No. 16]). After briefing was completed, Chief Judge John R. Tunheim referred the present Motion to the undersigned for a Report and Recommendation. (Order, [Docket No. 29]). The Court held a hearing on the Motion on September 6, 2017, after which the Motion was taken under advisement. (Minute Entry, [Docket No. 32]).

## II.  CIRRUS AVIATION'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, OR TO DISMISS OR STAY PENDING RESOLUTION OF THE FIRST-FILED NEVADA ACTION, [Docket No. 16]

In its Memorandum in Support of the present Motion, Cirrus Aviation moves the Court to dismiss this case for lack of personal jurisdiction or, in the alternative, to dismiss or stay this case pending resolution of a purportedly parallel case filed first in the United States District Court for the District of Nevada prior to the initiation of the present case in this Court. (Mem. in Supp., [Docket No. 18], 1-2). Despite Cirrus Aviation's prioritization of the issues presented, this Court will start by addressing the application of the first-filed rule. As this Court has previously explained:

> the question of whether this Court has personal jurisdiction would have no practical effect on whether the [Nevada] federal court has priority to consider the case, if the [Nevada] case was the first case filed in a court having jurisdiction

---

[10] Meanwhile, on May 22, 2017, Cirrus Design filed in the Nevada action a "Motion to Dismiss or, in the Alternative, Stay or Transfer and Supporting Memorandum of Points and Authorities," which also requested dismissal of the Nevada case or transfer to the United States District Court for the District of Minnesota on the grounds that (1) the Nevada case was purely preemptive and meant only to deprive the natural plaintiff –Cirrus Design—of the forum of its choice, or (2) the interests of justice support such a transfer. See, Cirrus Aviation Servs., LLC v. Cirrus Design Corp., No. 2:16-cv-02656-JAD-GWF (D. Nev.), [Docket No. 13], 4-9. That Motion has now been fully briefed, but as of the date of this Report and Recommendation, it has not yet been set for oral argument in the Nevada action. See, Id., [Docket Nos. 13, 14, and 22].

over the matter and there were no other circumstances warranting departure from the first-filed rule.

See, Scarlett v. White, No. 16-cv-2925 (JRT/LIB), 2017 WL 1011450, *4-5 (D. Minn. Feb. 22, 2017), report and recommendation adopted by 2017 WL 1011431 (D. Minn. March 14, 2017); see, also, Orthmann v. Apple River Campground, Inc., 765 F.2d 119 (1985) (applying first-filed rule without first ruling on whether personal jurisdiction exists over the defendant).

### A. First-Filed Rule

#### 1. Standards of Review

"[A] plaintiff 'should not be' allowed 'to litigate the same issue at the same time in more than one federal court.' Further, dismissal of duplicative claims comports with our long-standing 'general principle' of 'avoid[ing] duplicative litigation.'" Blakely v. Schlumberger Tech. Group, 648 F.3d 921, 932 (8th Cir. 2011).

> "Generally, the doctrine of federal comity permits a court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." Consistent with this principle, courts apply the "first to file" or "first-filed" rule in appropriate circumstances. "To conserve judicial resources and avoid conflicting rulings, the first-filed rule gives priority, for purposes of choosing among possible venues when parallel litigation has been instituted in separate courts, to the party who first establishes jurisdiction." Although called a rule, it "is not intended to be rigid, mechanical, or inflexible, but should be applied in a manner serving sound judicial administration." The rule "will not be applied where a court finds 'compelling circumstances' supporting its abrogation." Courts are alert to two "red flags" that suggest such compelling circumstances exist: first, if the party that filed the first suit was "on notice" that the other party intended to file its lawsuit imminently, and second, if the first lawsuit was an action for declaratory judgment, which "may be more indicative of a preemptive strike than a suit for damages or equitable relief."

Everest Indem. Ins. Co. v. Ro, No. 16-cv-1064 (JNE/HB), 2016 WL 4007578, *4 (D. Minn. July 26, 2016) (citations omitted). The decision whether to apply the first-filed rule is one that is

soundly within the discretion of this Court. See, Anheuser-Busch, Inc. v. Supreme Int'l Corp., 167 F.3d 417, 419 (8th Cir. 1999).

### 2. Analysis

As Cirrus Design concedes, the Nevada action was the first filed—it was filed on November 18, 2016, and the Minnesota action presently before this Court was filed on November 21, 2016. (See, Compl., [Docket No. 1]; Hansen Aff., Exh. A, [Docket No. 18-1], 3). Nevertheless, Cirrus Design argues that this Court should decline to apply the first-filed rule because Cirrus Aviation "rushed to the courthouse to secure its preferred forum despite the fact that [Cirrus Design] is the natural plaintiff for these claims." (Mem. in Opp., [Docket No. 24], 2). This argument is relevant to the first "red flag," which states that compelling circumstances to abrogate the first-filed rule may exist where the party that filed the first suit was on notice that the other party intended to file its lawsuit imminently.

Cases in which courts have found notice of imminent litigation to justify abrogation of the first-filed rule have involved definite indicators of notice and a race to the courthouse. For example, in Daikin Applied Americas Inc. v. Kavlico Corp., 111 F. Supp. 3d 961, 965 (D. Minn. 2015), the parties participated in mediation, during which the plaintiff informed the defendant that it intended to file suit in Minnesota if the mediation was unsuccessful, and the day after the unsuccessful conclusion of the mediation, the defendant filed suit in California. In the later-filed Minnesota suit, the Minnesota United States District Court rejected the defendant's subsequent motion to apply the first-filed rule and transfer the case to California, finding that the evidence that the defendant "both raced to the courthouse and was aware the [plaintiff] intended to file suit against it in Minnesota" warranted abrogation of the first-filed rule. Id. See, also, Fed. Cartridge Co. v. Remington Arms Co., Inc., No. 3-cv-6105 (ADM/AJB), 2003 WL 23101805, * 3 (D.

Minn. Dec. 31, 2003) (applying first-filed rule where the "[d]efendants were on notice of likely litigation by Federal Cartridge if they did not respond to the cease and desist letter by the specified date" and the defendants had been notified "that Plaintiff's counsel were authorized to pursue all legal remedies unless Defendants responded favorably by such date").

However, as has been acknowledged by other Courts within this District, as well as other nonjudicial commentators, there is a certain "tension between the anticipatory suit doctrine and the requirements for filing a declaratory judgment action." See, QFO Labs, Inc. v. Parrot, Inc., No. 16-cv-3443 (JRT/HB), 2017 WL 2638389, *3 (D. Minn. May 26, 2017), report and recommendation adopted at 2017 WL 2634155 (D. Minn. June 19, 2017) (citation omitted). In order for a declaratory judgment action to be justiciable, the dispute in question must be "immediate" and "real." See, Cat Tech LLC v. TubeMaster, Inc., 528 F.3d 871, 881 (Fed. Cir. 2008). Yet, in the context of the first-filed rule, filing a declaratory judgment action after notice of imminent litigation is a "red flag" which may persuade a court to abrogate the first-filed rule. See, Fed. Cartridge Co., 2003 WL 23101805, at * 3. "'[J]ust as Goldilocks searched for porridge that was neither too hot nor too cold, . . . accused infringers must show that the controversy is sufficiently immediate but was not filed in anticipation of imminent litigation.'" Patent Law's Goldilocks Rule: Anticipatory Suit Exception to the First-to-File Rule, American Bar Association (Feb. 7, 2017), https://www.americanbar.org/publications/litigation-committees/intellectual-property/articles/2017/patents-laws-goldilocks-rule-anticipatory-suit-exception-first-to-file-rule.html, (cited by QFO Labs, Inc., 2017 WL 2638389, at *3).

Keeping this tension in mind, as well as the correlary principle that "the analysis of whether a first-filed declaratory judgment action is anticipatory, and whether in such a case priority should be given to the later-filed lawsuit, is a fact-intensive one," see, QFO Labs, Inc.,

2017 2638389, at *3, this Court is cognizant that the anticipatory nature of a suit is only a factor to be considered; it is <u>not</u> dispositive of the applicability of the first-filed rule.

> The Eighth Circuit first articulated these two "red flags" as signals that there "<u>may be compelling</u> circumstances" to support abrogation of the first-filed rule. [<u>NW Airlines, Inc. v. Am. Airlines, Inc.</u>, 989 F.2d 1002, 1007 (8th Cir. 1993)] (emphasis added). By identifying these "red flags," the Eighth Circuit <u>did not define an exclusive list</u> of circumstances required to show such compelling circumstances. Instead, the Eighth Circuit identified these circumstances as two <u>potential indicators</u> ("red flags") that circumstances exist which may justify abrogation. <u>See</u>, <u>Id.</u> at 1006-07.

<u>Scarlett</u>, 2017 WL 1011450, at *6 n.1 (emphasis added).

In the present case, Cirrus Aviation initiated the Nevada action on November 18, 2016—11 days after Cirrus Design sent Cirrus Aviation a cease and desist letter stating that if Cirrus Aviation did not immediately withdraw its opposition to Cirrus Design's trademark application by November 21, 2016, Cirrus Design would file suit on the issue. However, the November 7, 2016, Letter from Cirrus Design gave Cirrus Aviation only 14 days in which to completely withdraw its opposition or face suit. Additionally, the year-long informal negotiations over the issue prior to any party bringing suit further undermines the argument that Cirrus Aviation filed its Nevada suit in bad faith. As noted above, a real and immediate controversy must first exist before a party may file a declaratory judgment action. It is at least questionable whether, prior to the November 7, 2016, Letter, Cirrus Aviation had a good faith belief that litigation over the trademark usage was sufficiently immediate to warrant a declaratory judgment action.

As to the second potential "red flag," although the Nevada action seeks declaratory judgment while the Minnesota action also contains a claim based upon Minnesota state law, "there is nothing inherently suspect about pursuing declaratory judgment. In <u>Clergy Financial, LLC v. Clergy Financial Services, Inc.</u>, 598 F. Supp. 2d 989, 994 (D. Minn. 2009), the District Court rejected the defendant's argument that a request for declaratory judgment alone was

enough, in and of itself, to justify refusal to apply the first-filed rule," when a plaintiff also seeks injunctive relief and damages. See, Scarlett, 2017 WL 1011450, at *8. Similarly, another District Court within the District of Minnesota has previously found no compelling circumstances to deviate from the first-filed rule where, although the first-filed case requested only declaratory relief, the plaintiff in that case "outlined several reasons why declaratory relief is necessary in this case." Hearth & Home Technologies, Inc. v. J & M Distributing, Inc., No. 12-cv-686 (SRN/TNL), 2012 WL 5995232, *5 (D. Minn. Nov. 30, 2012).

Returning to the Motion presently before this Court, in the Nevada action, Cirrus Aviation seeks declaratory judgment, as well as "compensatory damages . . . in an amount to be determined at trial." (Hansen Aff., Exh. A, [Docket No. 20-1]). Without commenting on the merits of Cirrus Aviation's Nevada litigation, the face of its Complaint therein is enough to satisfy the Court that Cirrus Aviation is a 'true' plaintiff" in the Nevada action and it did not simply file suit in order to make a preemptive strike against anticipated litigation. See, Id.[11]

Generally speaking, Cirrus Design has failed to show that either "red flag" exists to an extent that would justify abrogation of the first-filed rule. In the very brief argument dedicated to this issue, Cirrus Design only summarily argues that the timing of the filing of the Nevada action, combined with its status as a declaratory judgment action, should convince the Court not to apply the first-filed rule. (Mem. in Opp., [Docket No. 24], 30-31). However, neither of these circumstances is necessarily dispositive.

At the September 6, 2017, Motion Hearing, Cirrus Design argued strenuously to this Court that the Eighth Circuit's decision in Anheuser-Busch, Inc. v. Supreme Int'l Corp., 167 F.3d 417 (8th Cir. 1999), definitively precludes the application of the first-filed rule in the

---

[11] Indeed, seeking a declaratory judgment is an exceedingly common and regularly relied on procedural method to resolve whether trademark rights have or have not been infringed. In the context of the present case, there is nothing inherently suspect in Cirrus Aviation Services' seeking declaratory relief in the Nevada action.

present case. (Sept. 6, 2017, Motion Hearing, Digital Record, 1:53-55). Cirrus Design argued to this Court that <u>Anheuser-Busch</u> stands for "the well-established exception to the first-filed rule that applies specifically in trademark infringement cases when you send a cease-and-desist letter with a copy of the Complaint saying cease and desist [by a specific date] infringing our marks or we will sue you in Federal District Court . . . [sending such a cease-and-desist letter] preserve[s] [a party's] right to be the plaintiff in that action." (<u>Id.</u> at 1:53-55).

The undersigned has closely reviewed <u>Anheuser-Busch</u> and has found no such well-established rule stated therein. In <u>Anheuser-Busch</u>, the Eighth Circuit held that the United States District Court for the Eastern District of Missouri did not err by refusing to apply the first-filed rule and thus dismissing the case filed before it in favor of later-filed litigation in the United States District Court for the Southern District of Florida. 167 F.3d at 419. In so holding, the Eighth Circuit recognized that the District Court for the Eastern District of Missouri had found <u>multiple</u> factors which weighed in favor of declining to apply the first-filed rule. <u>Id.</u> Only one of the many factors considered was that Anheuser-Busch filed suit in Missouri when it was already on notice due to a cease-and-desist letter that Supreme International Corporation intended to file suit. <u>Id.</u> Indeed, contrary to Cirrus Design's belief, nothing in <u>Anheuser-Busch</u> indicates that the mere presence of a cease-and-desist letter should be the <u>deciding or controlling</u> factor for abrogation of the first-filed rule in the fact intensive inquiry required of the Court in exercising its discretion in the present context. Therefore, contrary to Cirrus Design's representations at the September 6, 2017, Motion Hearing in the case now before this Court, <u>Anheuser-Busch</u> does not establish a rule that controls and mandates abrogation of the first-filed rule in the instant case.

Rather, as the Eighth Circuit did in <u>Anheuser-Busch</u> and other courts within this District routinely have done when determining whether to apply or abrogate the first-filed rule, the

analysis in the present case requires examination of the unique circumstances of this particular case to determine whether abrogation of the generally applied first-filed rule is warranted. Doing so, this Court notes that the negotiations leading up to the filing of the Nevada action tend to demonstrate that the filing of the Nevada action was not done in bad faith, it is not clear that the case was even ripe prior to November 7, 2016, and the short window of time—14 days— provided by Cirrus Design by its November 7, 2016, letter in which Cirrus Aviation could withdraw opposition to Cirrus Design's application for trademark or face suit, which arguably then made the trademark disputes ripe for the first time, lessens the inference of an improper "race to the courthouse." Moreover, the Nevada action and the Minnesota action are "parallel litigations" in the sense that they arise out of the same dispute and concerns of the same parties.[12] See, Wright v. Walden Univ., LLC, No. 16-cv-4037 (DSD/DTS), 2017 WL 1435717, *2 (D. Minn. April 21, 2017) ("Parallel litigation exists when 'substantially the same parties litigate substantially the same issues in different forums.'" (quoting Lexington Ins. Co. v. Integrity Land Title Co., 721 F.3d 958, 968 (8th Cir. 2013)). Where multiple actions constitute "parallel litigations," the interests of judicial efficiency and the desire to avoid the risk of inconsistent judgments support the decision to allow one litigation to dispose of the claims. See, Wright, 2017 WL 1435717, at *3. Finally, in the Nevada action, Cirrus Aviation seeks damages in addition to declaratory judgment; thus, the Nevada action is not one "solely" for declaratory judgment such as might weigh in favor of abrogating the first-filed rule. For all of these reasons, the Court finds

---

[12] The Court is unpersuaded by Cirrus Design's conclusory assertion that its claim in the present case under the Minnesota Deceptive Trade Practices Act somehow weighs against litigation in the Nevada Federal District Court. (See, Mem. in Opp., [Docket No. 24], 31). There is no reason why, if such a claim is proper, it could not be litigated as a pendent claim in the Nevada action, where all parties acknowledge Federal question jurisdiction and personal jurisdiction properly lie. Moreover, it is clear that the Nevada Court could give Cirrus Design a full and fair hearing on the pendent Minnesota state law claim.

13

that Cirrus Design has failed to show the existence of any circumstance which would warrant abrogation of or departure from the application of the first-filed rule in this case.

"In applying the first-filed rule, courts have the discretion to dismiss, stay, or transfer the later-filed action." Conrad v. Colvin, No. 14-cv336 (DWF/HB), 2015 WL 4094244, *4 (D. Minn. July 5, 2015). See, also, Slidell, Inc. v. Archer Daniels Midland Co., No. 02-cv-4841 (MJD/JGL), 2003 WL 22050776, *4 (D. Minn. Sept. 2, 2003) ("Pursuant to the first-filed rule, a district court has the discretion to dismiss the later action, . . . or transfer it if an action involving the same parties and issues was earlier-filed in a different district"). The parties have represented to the Court that Cirrus Design is not disputing subject matter or personal jurisdiction in the Nevada case. (Mem. in Supp., [Docket No. 18], 20); see, also, Cirrus Aviation Servs., LLC, No. 2:16-cv-02656-JAD-GWF (D. Nev.). In light of these circumstances, the Court sees no reason to dismiss the case altogether, and instead, it finds that transfer better serves the interests of justice.

Because the Nevada case was filed prior to the case now before this Court and there are no compelling circumstances present to justify departure from the first-filed rule, this Court recommends **granting in part** under the first-filed rule Defendant Cirrus Aviation's Motion to Dismiss for Lack of Personal Jurisdiction, or to Dismiss or Stay Pending Resolution of the First-Filed Nevada Action, [Docket No. 16], and **denying in part as moot** the Motion to the extent that it requests relief based on a lack of personal jurisdiction over Cirrus Aviation Services by the District of Minnesota.

### IV. CONCLUSION

    A. Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction, Or to Dismiss or Stay Pending Resolution of the First-Filed Nevada Action, [Docket No. 16], be **GRANTED in part, DENIED in part as moot**, and the case be **TRANSFERRED** to the District of Nevada**.**

Dated: October 5, 2017

s/Leo I. Brisbois
The Honorable Leo I. Brisbois
United States Magistrate Judge

# N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).